# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

CARL WASHINGTON,

    **Plaintiff,**

v.

LAREDO PETROLEUM, INC.,
LESSLEY SERVICES, LLC, and
FESCO, LTD

    **Defendants,**

ONE BEACON AMERICA INSURANCE
COMPANY,

    **Intervening Defendant.**

_____

LAREDO PETROLEUM, INC. and
LESSLEY SERVICES, LLC,

    **Third Party Plaintiffs,**

v.

FESCO, LTD,

    **Third Party Defendant.**

**CIVIL NO. SA-14-CA-700-OLG**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**TO:** **Honorable Orlando L. Garcia**
    **Chief United States District Judge**

    Pursuant to the order referring this case to the undersigned United States Magistrate

Judge for pretrial management[1] and consistent with the authority vested in United States

---

[1] Docket no. 30 (Mar. 3, 2015).

Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local Rules for the Assignment of Duties to United States Magistrate Judges, the following report is submitted for your review and consideration.

## I. JURISDICTION

The Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II. SUMMARY OF PROCEDURAL HISTORY

On August 4, 2014, plaintiff initiated this suit by filing his original complaint asserting three claims of state law negligence, one against defendant Laredo Petroleum, Inc. ("Laredo"), one against defendant Lessley Services, LLC ("Lessley"), and one against defendant Wide Open Transport, Inc. ("Wide Open").[2]  Each of plaintiff's claims relate to an explosion that occurred when plaintiff, "an employee of Defendant Lessley and/or Defendant Wide Open," drove a transport truck to an oil well owned and operated by Laredo to load fracking product into the tanker.[3]  As a result of the explosion, plaintiff alleges he has suffered "severe personal injuries, pain, suffering, mental anguish, disability, impairment, and disfigurement, lost wages, lost earning capacity, and incurred reasonable and necessary medical expenses for the care and relief of his injuries" and will incur future medical expenses.[4]  Plaintiff's original complaint includes a jury demand.[5]

---

[2]  Docket no. 1.

[3]  Id. at 2-3.

[4]  Id. at 6.

[5]  Id. at 7.

On August 28, 2014, Laredo filed its answer to the complaint, which includes a jury demand.[6]  On September 24, 2014, Lessley filed its answer to the complaint with jury demand.[7]

On February 23, 2015, Lessley filed a third-party complaint against FESCO, Ltd. ("FESCO"), asserting a single claim of contribution and indemnification for negligence based on the incidents underlying plaintiff's claims.[8]  More specifically, FESCO's third-party complaint alleges Laredo was the owner of the facility where the incidents occurred; FESCO was Laredo's subcontractor which provided personnel and services for the operation and management of the facility at the relevant time; FESCO improperly directed or instructed plaintiff on the location for conducting his job duties, failed to warn plaintiff of danger or prevent the explosion, breached its duty of care, all of which caused injury to plaintiff, such that if Lessley is held liable to plaintiff on plaintiff's claim of negligence asserted against Lessley then Lessley is entitled to contribution and indemnification from FESCO.[9]

---

[6]  Docket no. 4.  On September 19, 2014, Wide Open filed a two-page document that appeared to be its answer to the plaintiff's original complaint.  Docket no. 6.  On April 4, 2014, the Court entered an order for Wide Open to show cause why its answer to plaintiff's original complaint not be stricken from the record for the reason there is no representation it was filed by an attorney licensed to practice in this Court.  Docket no. 44 at 3.  On August 26, 2015, Wide Open's answer was stricken.  Docket no. 65 at 2. On August 27, 2015, the District Clerk's Office entered default against Wide Open, after Wide Open had failed to file an answer to plaintiff's "live" pleading (at that time, plaintiff's first amended complaint).  Docket no. 66.  In lieu of filing a motion for default judgment against Wide Open, on September 16, 2015, plaintiff filed a notice to dismiss without prejudice his claims against Wide Open.  Docket no. 68.  The next day, the Court dismissed Wide Open as defendant.  Docket no. 72.

[7]  Docket no. 7.

[8]  Docket no. 24.

[9]  Id.

On March 4, 2015, the Court granted One Beacon America Insurance Company's ("One Beacon") unopposed motion to file a complaint in intervention and OneBeacon's complaint in intervention was filed.[10] OneBeacon's complaint, in part, alleges that OneBeacon

> issued a policy of occupational accident benefits to Transportation Industry Trust, which provided occupational accident coverage to plaintiff for the losses sustained by plaintiff as a result of this accident, according to the terms of the policy. OneBeacon has currently paid indemnity and medical benefits in the amount of $113,019.10 arising from the accident described herein, pursuant to the terms of the occupational accident policy.[11]

As relief, OneBeacon seeks reimbursement for amounts paid on plaintiff's behalf pursuant to the occupational accident policy if plaintiff is awarded relief on a negligence claim asserted in plaintiff's complaint.[12] As further relief, protectively, One Beacon also seeks statutory subrogation and reimbursement for amounts paid on plaintiff's behalf pursuant to a workers' compensation policy OneBeacon issued to Lessley if it is determined that plaintiff is an employee of Lessley.[13]

On March 6, 2015, the Court granted Laredo's unopposed motion to file a third-party complaint against FESCO[14] and Laredo's third-party complaint was filed, asserting a single claim of negligence against FESCO relating to the incidents addressed in plaintiff's original

---

[10] Docket nos. 27, 32, 33.

[11] Docket no. 33 at 3.

[12] Id. at 3-5.

[13] Id.

[14] Docket nos. 26, 31, 34.

complaint.[15]  Laredo's third-party complaint alleges, in sum, that "in the event that Plaintiff

recovers against [Laredo], that [Laredo] have judgment against . . . FESCO []for any and all

relief asserted by Plaintiff and damages awarded to Plaintiff."[16]

On March 10, 2016, the Court granted plaintiff's unopposed motion to file a first

amended complaint and plaintiff's first amended complaint, with included jury demand, was

filed.[17]  Plaintiff's first amended complaint again asserts one claim of negligence against Laredo,

FESCO, and Lessley, stating separately the grounds against each entity.[18]  With respect to

Laredo—whose motion for summary judgment is addressed in this report—plaintiff alleges, in

part:

> 10.  Defendant Laredo exercised and retained control over the manner in
> which the work was performed by Defendant Lessley Services, Defendant Fesco
> and/or Defendant Wide Open and their vice-principals, employees and agents at
> the subject site, including, but not limited to, the manner of work being performed
> at the time of the incident . . . .
> 11.  Specifically, Defendant Laredo through its agents, servants and
> employees exercised or retained control over the location where the subject
> incident took place.
> 12.  Moreover, Defendant Laredo through its agents, servants and
> employees exercised or retained control over the specific manner in which the
> Plaintiff loaded and unloaded his vehicle and provided him specific directions
> regarding the same.
> 13.  Defendant Laredo failed to ensure that the area in which the subject
> vehicle was being loaded was free of toxic, flammable, and/or explosive vapors.
> Moreover, Defendant Laredo failed to ensure that the area in which the subject

---

[15]  Docket no. 35.

[16]  Id. at 6.

[17]  Docket nos. 28, 36, 37.

[18]  Docket no. 37.  Plaintiff's first amended complaint also asserts a claim of negligence
against Wide Open.  As explained, the Court has dismissed Wide Open as a defendant.  See note
6, above.

vehicle was being loaded was properly ventilated. Additionally, Defendant Laredo failed to properly direct and/or warn Plaintiff concerning the dangerous vapors.

14. With respect to the loading of the truck, as well as the general safety of the workers at the site, Defendant Laredo was negligent because of the conditions as described herein, posing unreasonable risk of harm to the workers, including Plaintiff. Furthermore, Defendant Laredo had actual knowledge of the dangers and failed to exercise ordinary care to protect Plaintiff and other workers by failing to adequately warn Plaintiff of the conditions and among other things, failing to provide reasonable safe equipment and a reasonably safe work site.

15. Defendant Laredo had a duty to the workers, including Plaintiff, on the premises to engage providers of equipment, services and operators who were certified, knowledgeable and competent to do the work required in a safe and prudent manner. Defendant Laredo breached that duty by failing to have workers present that would ensure proper ventilation of dangerous vapors prior to the loading and unloading of vehicles. Defendant Laredo also breached that duty by failing to have workers present that would ensure that the trucks entering the work site and loading and/or unloading on the work site were properly equipped with emergency intake shut-off valves.

16. The above acts and omissions on the part of Defendant Laredo were a direct and proximate result of the injuries to Plaintiff.[19]

On May 4, 2015, FESCO filed its answer to Lessley's third-party complaint,[20] and separately filed a demand for trial by jury "on all issues."[21] The same day, Laredo filed an amended third-party complaint against FESCO, asserting a single claim of negligence.[22] On May 22, 2015, FESCO filed its answer to Laredo's amended third party complaint.[23] On January 20, 2016, Laredo filed its first supplemental answer to plaintiff's first amended complaint.[24]

---

[19] Docket no. 37 at 3-4.

[20] Docket no. 45.

[21] Docket no. 46 at 1.

[22] Docket no. 47.

[23] Docket no. 55.

[24] Docket no. 94.

According to the operative orders of the Court, this case is set for jury selection and trial to begin on May 23, 2016,[25] and the deadline for discovery, to mediate, and file dispositive motions is March 9, 2016.[26]

On February 8, 2016, Laredo filed its motion for summary judgment seeking entry of judgment as a matter of law on plaintiff's claim of negligence asserted against Laredo.[27] On February 21, 2016, plaintiff filed his response in opposition.[28]

## III. ISSUE

Whether Laredo's motion for summary judgment on plaintiff's negligence claim against Laredo asserted in plaintiff's first amended complaint should be granted or denied.

## IV. STANDARDS

### A.    Summary Judgment

The standard to be applied in deciding a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part as follows:

---

[25] Docket no. 76.

[26] Docket no. 84.

[27] Docket no. 96. Laredo submits four exhibits in support of its motion: Exhibit A—excerpts of deposition of Carlos Contreras, Jr.; Exhibit B—affidavit of Greg Brown; Exhibit C—affidavit of Chris Mattingly; and Exhibit D—affidavit of Danny Gray. Id. exhibits A-D.

[28] Docket no. 97. Plaintiff submits eight exhibits in support of his response: Exhibit 1—excerpts of deposition of plaintiff, Carl Washington; Exhibit 2—excerpts of deposition of Carlos Contreras, Jr.; Exhibit 3—excerpts of deposition of Chris Mattingly; Exhibit 4—excerpts of deposition of Garrett Clark; Exhibit 5—Laredo's Flowback Procedures; Exhibit 6—unsigned two-page handwritten "statement from Chris Mattingly taken by Marvin Baker on 2-14-14;" Exhibit 7— affidavit of Jean McDowell, an Incorporated Engineer in the field of Fire Safety Engineering; and Exhibit 8—Master Service Contract. Id., Exhibits 1-8.

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[29]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rule 56 requires that there be no genuine issue of material fact.[30] A fact is material if it might affect the outcome of the lawsuit under the governing law.[31] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[32] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[33]

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[34] The burden then shifts to the party

---

[29] FED. R. CIV. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

[30] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[31] Id. at 248, 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[32] Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[33] Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

[34] FED. R. CIV. P. 56(c)(1) provides:
Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

opposing the motion to present affirmative evidence to defeat a properly supported motion for

summary judgment.[35]  All facts and inferences drawn from those facts must be viewed in the

light favorable to the party resisting the motion for summary judgment.[36]  "The court need

consider only the cited materials, but it may consider other materials in the record."[37]  Summary

judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is

no genuine dispute as to any material facts and the moving party is entitled to judgment as a

---

(B)  showing that the materials cited do not establish the absence or
presence of a genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).  See also Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53.

[35]  Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15.

[36]  Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007); Hibernia Nat'l Bank
v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
At the summary judgment stage, facts must be viewed in the light most favorable
to the nonmoving party only if there is a 'genuine' dispute as to [the] facts.  As we
have emphasized,  "[w]hen the moving party has carried its burden under Rule
56(c), its opponent must do more than simply show that there is some
metaphysical doubt as to the material facts. . . Where the record taken as a whole
could not lead a rational trier of fact to find for the nonmonving party, there is no
'genuine issue for trial.'"  "The mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine issue of material
fact."  "When opposing parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could believe it, a court
should not adopt that version of the facts for purposes of ruling on a motion for
summary judgment."
550 U.S. at 380, 127 S.Ct. at 1776 (emphasis in original) (quoting FED. R. CIV. P. 56(c);
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356
(1986); Anderson, 477 U.S. at 247-48, 106 S.Ct. at 2510).

[37]  FED. R. CIV. P. 56(c)(3).

matter of law.[38] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[39]

If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."[40] The movant "must demonstrate the absence of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's case."[41] "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response."[42] On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[43] The Court may enter an order that does not grant all the relief requested by the motion, but states that "any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."[44]

---

[38] See Fields v. City of South Houston, Tex., 922 F.2d 1183, 1187 (5th Cir. 1991).

[39] FED. R. CIV. P. 56(c)(2).

[40] Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2554) (internal punctuation omitted), cert. denied __ U.S. __, 131 S.Ct. 355 (2010).

[41] Duffie, 600 F.2d at 371; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

[42] Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[43] FED. R. CIV. P. 56(e); Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111 (2002).

[44] FED. R. CIV. P. 56(g).

If the nonmovant cannot adequately defend against a motion for summary judgment, the

remedy is a motion for relief under Rule 56(d), which provides:

> (d)  When Facts Are Unavailable to the Nonmovant.  If a nonmovant shows by
> affidavit or declaration that, for specified reasons, it cannot present facts essential
> to justify its opposition, the court may:
> (1)  defer considering the motion or deny it;
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
> (3)  issue any other appropriate order.[45]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted

because the rule is designed to safeguard non-moving parties from summary judgment motions

that they cannot adequately oppose."[46]  To be entitled to a continuance of a summary judgment

proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the

party opposing the motion must demonstrate how additional time and discovery will enable the

party to rebut the movant's allegations there are no genuine issues of material fact.[47]

---

[45]  See FED. R. CIV. P. 56(d).

[46]  Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f)) (internal
punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir.2006) (same);
International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that
under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its
diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuance
of a motion for summary judgment for purposes of discovery should be granted almost as a
matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112
S. Ct. 936 (1992).  See also Sapp v. Memorial Hermann Healthcare Sys., 406 Fed. App'x 866,
869 (5th Cir. 2010).

[47]  See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for
believing that specified facts, susceptible of collection within a reasonable time frame, probably
exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending
summary judgment motion") (citations and internal punctuation omitted).

**B.     Texas Common Law Claim of Negligence**

To prove a claim for negligence, plaintiff has the burden to establish: (1) there was a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach.[48] "Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity."[49]

## V.  STATEMENT OF FACTS

For the purposes of Laredo's motion for summary judgment, plaintiff and Laredo do not appear to contest the following facts, which are set out to provide a factual context for the parties' arguments:

Laredo is the owner and operator of an oil well located in Reagan County, Texas near Big Lake, Texas (at times, the "Well").[50]   FESCO was performing flowback operations at the Well.[51] On February 13, 2014, Plaintiff Washington, an employee of Lessley and/or Wide Open, drove a 2006 Peterbilt tractor with attached tank to the location of the Well.[52]   After plaintiff had moved his tanker truck into position so that "fracking product" could be loaded into the tanker, flammable vapors that had accumulated in the area were ingested by the engine of plaintiff's

---

[48]  D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002) (citing El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987).

[49]  Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex.1992).

[50]  Docket no. 96 at 3 and Exhibit B; docket no. 97 at 3.

[51]  Docket no. 96 at 3 and Exhibit D; docket no. 97 at 7.

[52]  Docket no. 96 at 3; docket no. 37 at 2.

vehicle which led to a spontaneous combustion, explosion, and fire causing burns to plaintiff's body.[53]

Although the parties contest various facts,[54] as it relates to Laredo's motion for summary judgment, a principal dispute concerns the role, status, and activities of Chris Mattingly. Laredo argues:

> Laredo had no employee on the site of the Well in the hours prior to the accident. (See Ex. A, page 259 and Ex. C). Laredo had turned over control of the site during flowback operations to FESCO. (See Ex. A, pages 86, 92, 113, 114, 126, 158). Washington reported to FESCO employees that he was there in order to "begin loading fracking product into" his tanker truck. (See Plaintiff's First Amended Petition at 8).[55]

On the other hand, plaintiff argues:

> Laredo's employee, Chris Mattingly, directed Mr. Washington to the specific location where the activity of pulling the oil was to take place, a location that Laredo knew was not properly barricaded and where flammable vapors had accumulated. Moreover, Mr. Mattingly knew that, given the location where the loading was to take place, the configuration of Mr. Washington's transport truck placed a potential ignition source in too close a proximity to the flammable vapors when oil was being pulled from the tanks. Following Mr. Mattingly's instructions, Mr. Washington proceeded to the location, positioned his truck to begin the activity of pulling the oil. Regretfully, the flammable vapors were ingested by Mr. Washington's truck engine and there was an explosion and fire.[56]

---

[53] Docket no. 96 at 4; docket no. 37 at 2-3.

[54] For example, Laredo's motion for summary judgment argues:
There was an explosion and fire that resulted in burns to Mr. Washington's hands and forearms, areas of his body which were exposed because Mr. Washington had not complied with safety rules which required flame retardant clothing and gloves. (See Ex. A, page 277-279).
Docket no. 96 at 4.

[55] Docket no. 96 at 3-4.

[56] Docket no. 97 at 1-2.

# VI. DISCUSSION

Laredo's motion for summary judgment seeks entry of judgment as a matter of law on plaintiff's claims against Laredo on two main grounds. First, Laredo argues Chapter 95 of the Texas Civil Practice and Remedies Code bars plaintiff from recovery.[57] Second, Laredo argues "under the common law, to impose liability [p]laintiff must prove Laredo exercised control over Mr. Washington," and it did not exercise control over plaintiff's work.[58] In response, Washington argues, in sum, that Laredo has failed to meet its summary judgment burden.[59]

## A.    Chapter 95

Laredo seeks entry of summary judgment because Chapter 95 of the Texas Civil Practice and Remedies Code precludes plaintiff's negligence claim.[60] In support, Laredo argues, in sum, that it is a "property owner" within the meaning of Chapter 95 and plaintiff's claim "arises from the condition or use of an improvement to real property where Plaintiff's work constituted a construction, repair, renovation, or modification."[61] Specifically, Laredo asserts "[a]s an employee of Lessley or Wide Open, the independent contractor hired to remove 'fracking product' during the flowback operations, [p]laintiff, was involved in the construction of an improvement to real property."[62] Laredo further argues that plaintiff cannot meet his burden to

---

[57] Docket no. 96 at 6.

[58] Id. at 1, 13.

[59] Docket no. 97 at 17-18.

[60] Docket no. 96 at 5.

[61] Id. at 6.

[62] Id.

adduce evidence which raises a genuine issue of material fact to show Laredo exercised control over the manner in which plaintiff's work was performed, had actual knowledge of the danger or condition, and failed to warn of the danger or condition.[63]  Therefore, Chapter 95 applies and precludes plaintiff's negligence claim.[64]

In response, Washington "does not dispute that Laredo was a property owner pursuant to Chapter 95,"[65] but does dispute that Washington "constructed, repaired, renovated or modified the improvement."[66]  Specifically, Washington asserts that he

> was picking up a load of oil at Laredo's Well site.  There is no allegation, nor is there any evidence, that Mr. Washington constructed, repaired, renovated or modified the Well site, the tanks, the hoses, the pipes, or the equipment, or that he participated in any other aspect of the completion or operation of the well.[67]

Chapter 95 governs "Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery" and pertains to claims "for damages caused by negligence" against a "property owner."[68]  Chapter 95 specifies that it "applies only to a claim" described as follows:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

---

[63] Id. at 5-10.

[64] Id. at 6.

[65] Docket no. 97 at 11.

[66] Id.

[67] Id. at 12.

[68] TEX. CIV. PRAC. & REM. CODE ANN. § 95.001(1)-(3) (Vernon 1997).

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.[69]

When Chapter 95 applies, a property owner will not be liable for negligence claims arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress and receive reports; and
(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death or property damage and failed to adequately warn.[70]

If Chapter 95 applies, it is "the exclusive remedy for claims of negligence against a property owner by an independent contractor."[71]

Citing Painter v. Momentum Energy Corporation,[72] Laredo argues that Chapter 95 applies to Washington's claims because "as an employee of . . . the independent contractor hired to remove 'fracking product' during the flowback operations, [p]laintiff was involved in the construction of an improvement to real property."[73]  In Painter, the court held that drilling operations constitute construction of an improvement to real property for purposes of § 95.002.[74]

---

[69]  TEX. CIV. PRAC. & REM. CODE ANN. § 95.002 (Vernon 1997).

[70]  TEX. CIV. PRAC. & REM. CODE ANN. § 95.003(1)-(2) (Vernon 1997).

[71]  Petri v. Kestrel Oil & Gas Properties, L.P., 878 F.Supp.2d 744 (2012); Francis v. Coastal Oil and Gas Corp., 130 S.W.3d 76, 88 (Tex.App.–Houston [1st Dist.] 2003, no pet.) (holding that when Chapter 95 applies, it is the plaintiff's exclusive remedy and precludes common law negligence liability).

[72]  Painter v. Momentum Energy Corp,, 271 S.W.3d 388, 399 (Tex. App.–El Paso 2008 (pet. denied).

[73]  Docket no. 96 at 6.

[74]  271 S.W.3d at 399.

The Painter plaintiffs were employees of a contractor hired to drill a well.[75]  One plaintiff was injured and the other killed when the rotating head on a blowout preventer "fell from the top of the preventer."[76]  When the accident occurred, "the well had reached total depth and . . . employees were in the process of rigging down the drilling rig."[77]  The court concluded that "in the context of section 95.002, [Plaintiffs] were involved in the construction of an improvement to real property."[78]  The court found that "[d]rilling and the completion of drilling operations are more properly characterized as an essential part of the construction of a well, as opposed to some preliminary, unrelated task."[79]

Laredo's reliance on Painter is misplaced.  Laredo argues that Washington was involved in the construction of an improvement to real property within the purview of § 95.002[80] because he was "hired to remove 'fracking product.'"[81]  But, Laredo has not provided authority to show that removal of fracking product is properly characterized as "[d]rilling and the completion of drilling operations," "as opposed to some . . . unrelated task"[82] or otherwise is construction of an

---

[75]  Id. at 392-93.

[76]  Id. at 393.

[77]  Id.

[78]  Id. at 399.

[79]  Id.

[80]  Laredo does not argue, or provide evidence or authority to show, that Chapter 95 applies because Washington repaired, renovated, or modified the Well.  See Tex. Civ. Prac. & Rem. Code Ann. § 95.002.

[81]  Docket no. 96 at 6.

[82]  Painter, 271 S.W.3d at 399.

improvement to real property. Laredo has not provided a satisfactory argument demonstrating that the facts of <u>Painter</u> do not make it a factually distinguishable discussion of oil drilling as the construction of an improvement to real property.

Moreover, the ordinary meaning of "constructs" does not encompass removal of fracking product. In <u>Montoya v. Nichirin–Flex, U.S.A., Incorporated</u>, the court held that the Texas Legislature has not defined the term "constructs," as the term is used in Texas Civil Practice & Remedies Code § 95.002, and held "[c]onsequently, the word[] must be given [its] ordinary meaning."[83] The <u>Montoya</u> court noted that Webster's New Universal Unabridged Dictionary defines "construct" as "to build or form by putting together parts; frame; devise."[84] Plaintiff argues "it is clear [the] act of loading oil from a tank into a transport truck is not putting together parts, framing or devising."[85] Laredo has not shown removal of fracking product from storage tanks[86] is "construction" of the improvement.

---

[83] 417 S.W.3d 507, 512 (Tex.App.-El Paso 2013, no pet.).

[84] <u>Id.</u> (citing Webster's New Universal Unabridged Dictionary 436, 1236, 1632 (2003)).

[85] Docket no. 97 at 13.

[86] The summary judgment evidence is not clear, but it appears Washington was present at the Well so that oil could be moved from storage tanks to his tanker vehicle. Even if Washington's claim of negligence "arises from the condition or use of an improvement to real property" as addressed in § 95.002, it is not clear that removing oil from storage tanks is construction of an improvement to real property. Washington testified that, on the morning of February 13, he "filled up at the tank battery," "dump[ed] that load," and then "proceeded back to Sugg-D" to "get [his] load from the [ ] tanks." Docket no. 97, exhibit 1, Carl Washington's Aug. 12, 2015 deposition ("Washington dep.") at 128. Accordingly to plaintiff's evidence, the tank battery is considered a "container for clean oil" (docket no. 97, exhibit 2, Carlos Manuel Contreras, Jr.'s Nov. 3, 2015 deposition at 53), and the tanks contain oil and water (docket no. 97, exhibit 3, Chris Mattingly's Feb. 5, 2016 deposition ("Mattingly dep.") at 48).

18

Consequently, Laredo has not met its summary judgment burden to establish that Chapter 95 is applicable to exempt Laredo from liability (such that the statutory burden shifts to Washington to raise a genuine issue of fact regarding the statutory exclusions from the statutory exemption from liability). The Court cannot conclude at this time based on this record that Laredo has demonstrated it is entitled to judgment as a matter of law that Chapter 95 shields Laredo from liability on Washington's negligence claim.[87] Thus, Laredo's motion for summary judgment on this ground should be **denied**.

## B.  Common Law Negligence

Laredo presents an alternative ground for summary judgment if his motion pursuant to Chapter 95 is denied.[88] Laredo asserts "for the general contractor to be liable for the injury caused by the actions of an independent contractor, the general contractor must have control over the very instrumentality or aspect of the work that caused the injury."[89] Laredo argues it "had no employees, agents, or representatives at the Well location at any time while Washington was at the Well location" and "did not supervise Washington's work, direct him, or retain any control over the manner in which Washington's work was performed."[90] In response, Washington asserts that Chris Mattingly, a Laredo employee, "negligently ordered Mr. Washington to engage

---

[87]  Francis, 130 S.W.3d at 88.

[88]  Docket no. 96 at 11-13.

[89]  Id. at 11 (citing Coastal Marine Service of Texas, Inc. v. Lawrence, 988 S.W.2d 223, 225 (Tex. 1999); Exxon v. Tidwell, 867 S.W.2d 19, 22-23 (Tex. 1993)).

[90]  Id. at 12.

in ongoing loading operations at a location that had an ongoing and uncontrolled release of dangerous and combustible vapors."[91]

Laredo frames its request for entry of judgment as a matter of law on Washington's common law negligence claim in terms of factors relevant to the Chapter 95 analysis, arguing Laredo lacking "sufficient control over Washington to support liability," had "no contractual right of control," and "did not exercise any control over Washington's work."[92] Laredo states, "[i]n fact Laredo had no employees, agents, or representatives at the Well location at any time while Washington was at the Well location."[93] To the contrary, Washington has presented competent summary judgment evidence showing that Chris Mattingly was a Laredo employee present at the Well location at the time of the accident who interacted with Washington and gave Washington instructions relating to Washington's work.[94] There is a genuine issue of material

---

[91] Docket no. 97 at 14. Washington also asks the Court to strike Mattingly's affidavit, which was filed as exhibit C to Laredo's motion. Docket no. 97 at 16-17. Washington argues "Mattingly's affidavit contradicts his prior sworn testimony" and "[c]ourts should disregard a subsequent affidavit as a sham." Docket no. 97 at 16-17. The Fifth Circuit has held that "'[a]n opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.'" Kenneth Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980) (citation and note omitted). Conflicts between Mattingly's deposition and affidavit "present questions of credibility which require jury resolution." Id. at 896. Accordingly, Washington's motion to strike Mattingly's affidavit is **denied**. Washington's objections relate to the weight to be given to Mattingly's affidavit testimony, not its admissibility.

[92] Docket no. 96 at 12-14.

[93] Id. at 12.

[94] Plaintiff has submitted excerpts of the deposition transcripts of Washington and Mattingly. Washington testifies in his deposition that on the morning of February 13, 2014, Garrett (a FESCO employee) explained to Washington that he would be loading from Tank 70. Washington dep. at at 124. Tank 70 did not contain "enough oil for [Washington] to get a load from." Id. Garrett then directed Washington to the battery of "seven or eight tanks" to get a

20

fact concerning the role and status of Mattingly (again, Laredo does not admit there was a Laredo employee present with Washington at the Well location) as well as the interactions between Mattingly and Washington (Laredo does not admit that it or any Laredo employee directed Washington in any of his work). Therefore, Laredo's motion for summary judgment on plaintiff's common law claim of negligence should be **denied** at this time.

## VII. RECOMMENDATIONS and ORDER

Following a thorough review of all submissions, it is **recommended** that defendant Laredo Petroleum, Inc.'s motion for summary judgment[95] be **DENIED**; and it is **ordered** that plaintiff Washington's motion to strike Chris Mattingly's affidavit[96] is **DENIED**.

## VIII. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for

---

load. Id. Washington proceeded to the other battery of tanks, at which time a gentleman driving behind Washington in a pickup stopped Washington. Id. at 124-125. Washington spoke to the gentleman, who explained to him "'[y]ou get your load from the battery right now, but when you come back go over there and get your load from . . . the frac tanks.'" Id. at 125. Washington did not get the name of the driver of the pickup truck. Id. Mattingly testifies in his deposition that he was the Laredo representative and lease operator that covered the Well. Mattingly dep. at 113. Mattingly also testifies he "followed the EDF driver (Washington) and stopped him on the road and informed him that we were going to be hauling from the frac taks," Id. at 93, and "that we may be hauling loads from that tank battery—or from that location." Id. at 65.

[95] Docket no. 96.

[96] See docket no. 97 at 16-17.

Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14 days** after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a <u>de novo</u> determination by the District Court.[97]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[98]

**SIGNED and ENTERED** this 4th day of March, 2016.

_Pamela A. Mathy_
**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[97] <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[98] <u>Acuna v. Brown & Root Inc.</u>, 200 F.3d 335, 340 (5th Cir. 2000); <u>Douglass v. United Serv. Auto. Ass'n.</u>, 79 F.3d 1415, 1428 (5th Cir. 1996).